OSAGE OUTDOOR ADVERTISING, INC., Plaintiff-Respondent,

v.

STATE HIGHWAY COMMISSION OF MISSOURI, Defendant-Appellant.

No. WD 31866.

Missouri Court of Appeals, Western District.

Nov. 10, 1981.

---

Bruce A. Ring, Chief Counsel, Curtis F. Thompson, Asst. Counsel, Jefferson City, for defendant-appellant.

Alex Bartlett, Jefferson City, for plaintiff-respondent.

Before TURNAGE, P. J., and PRITCHARD and CLARK, JJ.

1. All statutory references are to RSMo 1978

TURNAGE, Presiding Judge.

Osage Outdoor Advertising brought an action to restrain the State Highway Commission from enforcing a rule pertaining to outdoor advertising signs published in 7 C.S.R. 10–6.070(6). The trial court found the rule to be beyond the power of the Commission to adopt and enjoined the Commission from enforcing the rule. Affirmed.

The Commission on October 15, 1977, adopted the rule in question. The rule was apparently designed to implement the provisions of § 226.550.3, RSMo 1978,[1] which authorizes the Commission to collect a biennial inspection fee for each sign which has been issued a one-time permanent permit pursuant to § 226.550.1–2.

In summary, the rule requires sign owners or the owners of land on which a sign is located to apply to the Commission for a biennial inspection. The application, together with the fee authorized by § 226.-550.3, is due on or before the second annual anniversary of the date the permanent permit was issued and each two years thereafter. The rule provides if the application is not made within that time the permit is voidable and notice to remove the sign may be issued under § 226.580 specifying the failure to obtain and maintain a permit. If the application and fee are not received within thirty days after the date of this notice, then the sign is deemed unlawful and shall be removed without compensation.

The application must be submitted to the district engineer on forms supplied by the Commission. The forms must be completed in full and incomplete or incorrectly completed forms shall be rejected. Also, an application without the required fee will be rejected. Any misrepresentation of material fact on any application shall be cause for the district engineer to reject the application and void the permit. When this happens, the sign is then maintained without a permit and is subject to removal.

Any applicant for a biennial inspection must submit to the district engineer on written request for him, written informa-

unless otherwise noted.

tion for documentation, as specified in the request, sufficient for the engineer to determine whether or not a permit shall be renewed. Refusal on the part of the applicant to comply with the written request for information, documentation or assistance shall be grounds for voiding the permit. After notice is given of the voiding of the permit, the sign is then subject to removal under § 226.580.

The rule further provides that any sign not eligible for a permanent permit shall not pass the biennial inspection. Upon the failure of any sign to pass a biennial inspection, the permit is voidable and the engineer shall issue notice to remove. If the defect is not remedied within thirty days, the permit is void and the sign shall be removed under § 226.580.

Upon satisfactory completion of the biennial inspection and payment of the fee, the engineer shall issue a new permit emblem bearing the original permit number which must be attached to the sign within sixty days of issuance. If the emblem is not attached within that time, or if it is used on any other sign, the permit is void and the sign is then maintained without a permit and is subject to removal under § 226.580.

The trial court heard testimony from one employee of the Commission who is involved in inspecting signs. He stated that he had a computer printout of all signs which had been issued a permanent permit. He stated this rule would make it easier to check to see if a sign had a permit because the permanent permit emblem sometimes faded or became separated from the sign. Osage presented one witness who testified to the time and expense imposed upon Osage, as the owner of about one thousand signs in the State, in complying with the rule to make applications for biennial inspections.

The parties agree, as they must, that § 226.530 requires the Commission to issue one-time permanent permits for the erection and maintenance of outdoor advertising along the interstate and primary high-way systems and "to promulgate only those rules and regulations of minimal necessity and consistent with customary use to secure to this state any federal aid contingent upon compliance with federal laws, rules and regulations relating to outdoor advertising."

In *State ex rel. River Corp. v. State Tax Commission*, 492 S.W.2d 821, 825[3] (Mo.1973) the court held that "[r]egulations may be promulgated only to the extent of and within the delegated authority of the statute involved." The court further held that a rule in conflict with the sense and meaning of a statute is invalid. This court in *Johnson v. Labor & Ind. Relations Com'n*, 591 S.W.2d 241, 244[1, 2] (Mo. App.1979) held that a rule or regulation which conflicts with a statute must fall.

It is clear from §§ 226.500 to 226.600 that the legislature undertook to do the bare minimum by way of regulating the outdoor advertising which it could do and still not suffer the loss of federal highway funds.[2] It is abundantly clear that the legislature did not intend for the Commission to make extensive rules and regulations and it specifically limited the Commission to making those rules and regulations of minimal necessity which would insure that Missouri would not suffer any loss of federal money. It is further clear from these sections that the legislature carefully specified those signs which could be removed with and without compensation.

The scheme envisioned in these sections regulating outdoor advertising is that a one-time permanent permit would be issued and a biennial inspection fee could be collected by the Commission thereafter. These statutes clearly do not authorize any further permit after the one-time permanent permit. The statutes clearly do not authorize the Commission to void the permanent permit once it has been issued, yet in the rule adopted the Commission grants to itself the power to void permanent permits and order signs removed without the

---

2. For a history of § 226.500—226.600 see *Eller Outdoor Advertising v. State Highway Commission*, —— S.W.2d —— (Mo.App.1981), No. WD 31873, filed October 27, 1981.

payment of compensation. The Commission granted itself the power to accomplish this (1) if the application for the biennial inspection is not made within the time set by the Commission; (2) if the application is incomplete or incorrect; (3) if there is any misrepresentation of material fact in the application; (4) if an owner refuses to comply with a written request from the Commission for information, documentation or assistance; (5) on failure of a sign to pass the biennial inspection; and (6) on failure to attach a new permit emblem to the sign within sixty days after issuance.

All of these grounds for voiding of the permanent permit are beyond any provision of the statute. In fact, the statutes contain no provision for voiding a permanent permit.

The Commission urges that the application for the biennial inspection is necessary in order to carry out the inspection. However, the evidence showed that the Commission maintains a computer printout which lists the signs for which a permanent permit has been issued. Thus, the Commission is already possessed of the information which it seeks to obtain from an application for a biennial inspection. It might be conceded that the biennial inspection fee which the Commission is authorized to collect would have to be accompanied by some information identifying the sign on which payment is made. However, the Commission has already issued a permanent permit for each sign and it would be very simple to identify the sign for which the biennial fee is being paid by that permit number without requiring the elaborate application process which this rule envisions and attaching the penalty of possible removal without compensation.

By providing for the removal of signs without compensation, this rule goes far beyond § 226.580 which provides for the removal of unlawful signs without the payment of compensation. There is no authority granted to the Commission to make unlawful a sign which has been given a permanent permit. Thus, the rule far exceeds the power given to the Commission to adopt rules.

Further, there was no evidence that the rule was necessary to secure federal aid to this State. The Commission contends that the rule is largely a matter of convenience to assist in making the biennial inspection. However, as pointed out, the rule far exceeds the power given the Commission to adopt rules and regulations concerning outdoor advertising signs.

For the above reasons, the rule goes beyond the power of the Commission and is, therefore, beyond the power of the Commission to enforce. The judgment is affirmed.

All concur.